RECEIVED

JUL 28 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **WILLIAM E. HOOKER** | : | CIVIL ACTION |
| 367 Village Way | : | |
| Chalfont, PA 18914 | : | |
| | : | No. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| **NOVO NORDISK INC.** | : | |
| 800 Scudders Mill Road | : | |
| Plainsboro, NJ 08536 | : | |

## CIVIL ACTION COMPLAINT

### I.    Jurisdiction and Venue

1.    This action is initiated pursuant to federal and state anti-discrimination laws.

2.    This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

3.    The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights. The Court may also maintain supplemental jurisdiction over state law claim set forth herein

pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because it is sufficiently related to the claim(s) within the Court's original jurisdiction that it forms part of the same case or controversy.

4.      The United States District Court for the District of New Jersey also has diversity jurisdiction 28 U.S.C. § 1332 as the parties of citizens of different states and the amount in controversy is in excess of $75,000.

5.      Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and © because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was working in the District of New Jersey at the time of the illegal actions set forth herein) and Defendant is subject to personal jurisdiction in the District of New Jersey.

## II.    Parties

6.      Plaintiff lives in the Commonwealth of Pennsylvania with an address as encaptioned above.

7.      Defendant is a healthcare company established in Denmark, and a world leader in diabetes pharmacology.  Defendant maintains an office near Princeton, NJ and Plaintiff worked out of that office during his employment.

8.      At all times relevant herein, Defendant acted through its several agents, servants, and employees (including but not limited to those named elsewhere in this Complaint), each of whom acted in the course and scope of their employment for Defendant at all times relevant

2

herein. Defendant is therefore fully responsible for the illegal and discriminatory acts and omissions of the aforesaid employees pursuant to the principle of *respondeat superior*.

## IV.    Procedural and Administrative Requirements

9.    Plaintiff's claims arise under the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq.*), the New Jersey Law Against Discrimination (N.J.S.A. 10:5-12) ("NJLAD"), and 42 U.S.C. § 1981.

10.    Plaintiff has exhausted the procedural and administrative requirements for proceeding under the ADEA and the NJLAD. In particular:

      a.    On or about November 3, 2015, Plaintiff filed his Charge of Discrimination with the Philadelphia Office of the U.S. Equal Employment Opportunity Commission ("EEOC") where it was assigned Charge No. No. 530-2016-00600;

      b.    On or about April 29, 2016, the EEOC mailed a Notice of Right to Sue to Plaintiff on the aforesaid Charge;

      c.    The instant action is timely because it is initiated within ninety (90) days of the receipt of the aforementioned Notice;

      d.    Plaintiff fully exhausted his administrative remedies.

## V.    Factual Background

11.    Plaintiff's date of birth is August 31, 1952.

12.    In 2006 Defendant hired him as a Manager in its Strategic Sourcing department.

13.    In this role, and his later role of Senior Manager, Plaintiff was actively involved with leading internal spending projects to help drive significant value productivity.

14.     Plaintiff also helped create and lead Defendant's supplier diversity program.

15.     In 2012, when Plaintiff's direct supervisor's employment ended, Plaintiff applied for that position.

16.     **Karsten Munk Knudsen** - one of Defendant's highest-ranking vice presidents worldwide - had recently been sent over from Denmark to work in Princeton.

17.     Knudsen denied Plaintiff the promotion, but not because of Plaintiff's credentials. Indeed, Knudsen told Plaintiff it wasn't because Plaintiff couldn't do the job, because he knew Plaintiff could. Rather, Knudsen said it was because he wanted some "fresh blood."

18.     This comment was not the only one Knudsen made illuminating his perceptions of older workers. Another time, when reviewing candidates for other positions, Knudsen said they needed to hire the young people who can be trained by the older people. Knudsen also told his direct reports to "prune" the work force.

19.     One of Knudsen's mentors is Jesper Brandegard, a top executive in Denmark. Brandegard also expressed preference for younger workers. In a meeting he called the company a "young" one, but looked at Plaintiff and said they like their "older workers" too.

20.     Knudsen also made statements indicating other prejudices. Once he referred to African-Americans as "dark ones." He took exception when a male colleague wore pink tie, calling it "risky" - perhaps reflecting a prejudice against gay men. Additionally, Knusden discouraged Plaintiff's nationally-acclaimed diversity initiative.

21.     After denying Plaintiff the 2012 promotion for reasons unrelated to merit, in 2013

4

Knudsen put Plaintiff on an Action Plan and tried to discipline him out of the company.  It was an obvious, contrived effort to "prune" an older worker.

22.      Plaintiff vigorously complained to HR about Knudsen's litany of prejudices, including the age and racial comments.  A full-blown investigation ensued.  As a result of the investigation, Plaintiff was spared execution and Knudsen was exiled back to Denmark.

23.      Less than two years later, the company got its revenge.  In early 2015 they began anew the process of disciplining Plaintiff out of the company.  The process ended in August 2015 when he was fired based on phony allegations of performance deficiencies.

24.      Defendant's message to "troublemakers" like Plaintiff is unmistakable:  if you report discrimination (in particular, against one of Defendant's supreme officials worldwide), your days are numbered.

## COUNT ONE
## AGE DISCRIMINATION

25.      In the manner set forth above and in violation of the ADEA and NJLAD, Defendant has engaged in knowing, purposeful and unlawful age discrimination by conditioning the terms, conditions or privileges of Plaintiff's employment on the basis of age.

26.      In the manner set forth above in violation of the ADEA and NJLAD, Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's right to be free from employment discrimination based on his age.

27.      As a result of the age discrimination inflicted by Defendant, Plaintiff suffered

5

damages including but not limited to denial of employment, lost wages, lost benefits, lost promotions, lost training, and lost experience.

28.     As a result of the age discrimination inflicted by Defendant, Plaintiff has suffered emotional pain, anguish and suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT TWO
## UNLAWFUL RETALIATION FOR OPPOSING AGE DISCRIMINATION

29.     In the manner set forth above and in violation of the ADEA and NJLAD, Defendant has engaged in knowing, purposeful and unlawful retaliation by discharging Plaintiff on account of his complaints about Knudsen's age-discriminatory conduct.

30.     In the manner set forth above in violation of the ADEA and NJLAD, Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's protected right to be free from retaliation.

31.     As a result of the retaliation inflicted by Defendant, Plaintiff suffered damages including but not limited to denial of employment, lost wages, lost benefits, lost promotions, lost training, and lost experience.

32.     As a result of the retaliation inflicted by Defendant, Plaintiff has suffered emotional pain, anguish and suffering, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

6

## COUNT THREE
## UNLAWFUL RETALIATION FOR OPPOSING RACE DISCRIMINATION

33.     In the manner set forth above and in violation of 42 U.S.C. § 1981 and the NJLAD,

Defendant has engaged in knowing, purposeful and unlawful retaliation by discharging

Plaintiff on account of his complaints about Knudsen's racially discriminatory conduct.

34.     In the manner set forth above in violation of 42 U.S.C. § 1981 and the NJLAD,

Defendant has engaged in discriminatory practices with malice and reckless indifference to

Plaintiff's protected right to be free from retaliation.

35.     As a result of the retaliation inflicted by Defendant, Plaintiff suffered damages

including but not limited to denial of employment, lost wages, lost benefits, lost promotions,

lost training, and lost experience.

36.     As a result of the retaliation inflicted by Defendant, Plaintiff has suffered emotional

pain, anguish and suffering, humiliation, inconvenience, loss of enjoyment of life, and other

non-pecuniary losses.


**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

        A.     Defendant is to be permanently enjoined from discriminating or retaliating

against Plaintiff on any basis forbidden applicable federal and state law;

        B.     Defendant is to promulgate and adhere to a policy prohibiting discrimination

and retaliation;

        C.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff

7

whole for any and all pay and benefits Plaintiff would have received had it not been for all Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

      D.     Plaintiff is to be awarded actual damages, as well as compensatory damages for the emotional distress caused by Defendant's actions;

      E.     Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the trier of fact to be appropriate to punish Defendant for its reckless indifference to our society's equal employment opportunity laws;

      F.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just;

      G.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees and as provided by applicable federal and state law;

**REQUEST FOR JURY TRIAL**

      Plaintiff hereby makes his request for a jury trial for all claims raised in this action.

                  Respectfully submitted,

                  William E. Hooker
                  367 Village Way
                  Chalfont, PA 18914
                  Plaintiff pro se
                  215.822.3262
                  bill@bill-hooker.com

Dated:     July 28, 2016